## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ) | |
| SUNY RODRIGUEZ ALVARADO, ) | |
| and A.S.R., a minor, ) | |
| ) | Civ. No.: 2:16-cv-05028 (MCA) (SCM) |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | Date: August 1, 2018 |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' REQUEST TO DEPOSE FORMER ICE EMPLOYEE THOMAS HOMAN

Plaintiffs request the opportunity to depose a single, retired Immigration and Customs Enforcement ("ICE") employee, Thomas Homan. As the Government concedes, during all times relevant to this case, Mr. Homan was Executive Associate Director of Enforcement and Removal Operations ("ERO"), an operational directorate of ICE. Gov't Mem. at 3. Because he was not a high-level official for the purposes of this case, the apex doctrine is inapplicable. Regardless, by virtue of his direct intervention in a critical sequence of decisions in this case, Mr. Homan has unique, first-hand, non-privileged knowledge of key facts relevant to Plaintiffs' claims. For the reasons set forth below, Plaintiffs respectfully submit that Mr. Homan may be deposed pursuant to Federal Rules of Civil Procedure 26(b) and 30. Although Mr. Homan is no longer a government employee, Plaintiffs are still willing to discuss ways to accommodate his schedule, including with

regard to the location of his deposition.  Plaintiffs are also willing to accept reasonable limitations on the duration of Mr. Homan's deposition.[1]

## ARGUMENT

### I.     Legal Standard

"An order precluding the deposition of a witness is of course the exception rather than the rule in federal court."  *Sanstrom v. Rosa*, No. 93 CIV. 7146, 1996 WL 469589, at *5 (S.D.N.Y. Aug. 16, 1996) (quoting *Martin v. Valley National Bank of Arizona*, 140 F.R.D. 291, 314 (S.D.N.Y.1991)); *Nye v. Ingersoll-Rand Co.*, No. 08-CV-3481 (DRD) (MAS), 2010 WL 1227213, at *2 (D.N.J. Mar. 24, 2010) ("Importantly, the party asserting that discovery should be prohibited bears the burden of establishing the lack of relevancy or undue burden."); *see Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986) ("As the district court explained, Rule 26(c) places the burden of persuasion on the party seeking the protective order. To overcome the presumption, the party seeking the protective order must show good cause by demonstrating a particular need for protection. Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test."); *see also* Fed. R. Civ. P. 30 ("A party may, by oral questions, depose any person, including a party, without leave of court except as provided in Rule 30(a)(2).").

Cases are legion that hold that the deposition of an individual—even a high-level official or officer—who possesses relevant information is proportionate and appropriate.  *See, e.g.*, *Lozada v. Cty. of Nassau*, No. 16-CV-6302, 2017 WL 6514675, at *3 (E.D.N.Y. Dec. 20, 2017) (holding

---

[1] Given the simplicity of their deposition request, Plaintiffs did not believe that briefing in addition to the joint dispute letter was necessary in this case, *see* Judicial Preferences of Judge Mannion, http://www.njd.uscourts.gov/content/steven-c-mannion (allowing for additional briefing in "complex" cases). Plaintiffs felt compelled to provide a more fulsome response only after the Government decided to submit an additional memorandum.

that the deposition of "high-ranking public officials" was appropriate because they "were personally involved in and/or had personal knowledge of the denial of [the plaintiff's] previously approved position"); *Robinson v. Dallas Cty. Cmty. Coll. Dist.*, No. 14-CV-4187, 2016 WL 1273900, at *6 (N.D. Tex. Feb. 18, 2016) (holding that deposing the company's Vice President was "proportional to the needs of the case," "regardless of whether [the deponent] is likely to provide facts that are dispositive" because his "testimony is relevant to issues of some importance in the case"); *Boudouris v. Cty. of Nassau*, No. 14- CV-6719, 2016 WL 4288645 (E.D.N.Y. Aug. 15, 2016) ("[T]he depositions will not 'significantly interfere' with [two high level officials'] execution of their duties as Plaintiff agreed to limit the depositions to two hours each, and at a time and place agreeable to the officials."); *Hardin v. Wal-Mart Stores, Inc.*, No. 08-CV-0617, 2011 WL 6758857, at *2 (E.D. Cal. Dec. 22, 2011) ("There is no question [the Executive Vice-President] is a busy, high-ranking executive. However, that status, by itself, is insufficient to preclude her deposition.  The Court is satisfied that [she] has personal knowledge of facts relevant to this lawsuit and her deposition may go forward."); *Murray Energy Corp. v. McCarthy*, No. 5:14-CV-39, 2015 WL 7017009, at *9 (N.D.W. Va. Nov. 12, 2015) (allowing the deposition of EPA Administrator McCarthy); *United States v. City of New York*, No. 07-CV-2067, 2009 WL 2423307, at *2 (E.D.N.Y. Aug. 5, 2009) (allowing the deposition of Mayor Michael Bloomberg).

"Generally, the depositions of former government officials are granted where the official has been personally involved in the events at issue in the case." *Toussie v. Cty. of Suffolk*, No. CV 05-1814, 2006 WL 1982687, at *2 (E.D.N.Y. July 13, 2006); *Energy Capital Corp. v. United States*, 60 Fed. Cl. 315, 318 (2004) ("[I[t is also clear in the context of deposing former high-ranking government officials is that depositions are allowed if the party has personal knowledge of the facts in issue."); *see, e.g.*, *Sanstrom*, 1996 WL 469589, at *5 ("However, because Mr.

Cuomo is no longer governor, he cannot claim this privilege." (citing *Gibson v. Carmody*, No. 89-CV-5358, 1991 WL 161087 at *1 (S.D.N.Y. Aug. 14, 1991) (allowing the deposition of former New York City Police Commissioner))); *Bey v. City of New York*, No. 99-CV-3873, 2007 WL 2245180, at *3 (S.D.N.Y. Aug. 3, 2007), *objections overruled sub nom. Wat Bey v. City of New York*, No. 01-CV-8906 (LMM), 2007 WL 3085440 (S.D.N.Y. Oct. 19, 2007) ("Because [Rudolph] Giuliani is no longer a governmental official, there is no reason to believe that a deposition would 'significantly interfere with [his] ability ... to perform his governmental duties.' Therefore, plaintiffs' motion for a protective order to preclude the deposition of Giuliani is DENIED**.**" (citation omitted)); *Willingham v. Ashcroft*, 226 F.R.D. 57, 65 (D.D.C. 2005) (allowing the deposition of Former Drug Enforcement Administrator Donnie Marshall); *Am. Broad. Companies, Inc. v. U.S. Info. Agency*, 599 F. Supp. 765, 770 (D.D.C. 1984) (allowing the deposition of the former Director of the United States Information Agency); *Energy Capital Corp. v. United States*, 60 Fed. Cl. 315 (2004) (allowing the deposition of former Secretary of Housing and Urban Development (HUD) Andrew Cuomo and Howard Glaser, HUD's former General Counsel).

This is because some of the main rationales underlying the protection of high-level officials are no longer present when those officials leave office.  "It is true that when the witness sought to be deposed is a high-level government official, a party must show both the need for the deposition and that it will not hinder governmental functions."  *Sanstrom*, 1996 WL 469589, at *5; *see Van Den Eng v. Coleman Co.*, No. 05-MC-109, 2005 WL 3776352, at *2 (D. Kan. Oct. 21, 2005) ("One purpose cited for use of the Apex doctrine is to protect high-level officials from harassing discovery efforts that would hinder their corporate [or governmental] responsibilities.").  But when the official or officer retires, there are no governmental responsibilities with which to interfere.  *Sanstrom*, 1996 WL 469589, at *5; *Van Den Eng v. Coleman Co.*, 2005 WL 3776352,

at *2; *Victory v. Pataki*, No. 02-CV-0031(SR), 2008 WL 4500202, at *2 (W.D.N.Y. Sept. 30, 2008) ("There can be no question, however, that a deposition of a former official can no longer pose the risk of interfering with governmental duties.").  Accordingly, "[t]he fact that a proposed deponent is not a current high-ranking official is a factor when considering whether the information can be obtained through less burdensome means and whether the deposition will interfere with the official's government duties."  *Sec. & Exch. Comm'n v. Comm. on Ways & Means of the U.S. House of Representatives*, 161 F. Supp. 3d 199, 252 (S.D.N.Y. 2015) (alterations and internal citation omitted).

## II.   The Court Should Decline the Government's Request to Expand the Apex Doctrine to Reach the Deposition of Mr. Homan in this Case.

In this case, the Government seeks to drastically expand the apex doctrine by applying it to Mr. Homan, who was not a high-level official at any point during this case.  Before the Court can even apply the doctrine, it must determine whether Mr. Homan was a high-ranking government official at the time he directly intervened in this case.  *See Sec. & Exch. Comm'n v. Comm. on Ways & Means of the U.S. House of Representatives*, 161 F. Supp. 3d 199, 250 (S.D.N.Y. 2015) ("Whether an official is a 'high ranking government officer' . . . is determined on a 'case-by-case basis.'" (citations omitted) (alternations in original)).  The Government does not argue, nor could it, that the Executive Associate Director of Enforcement and Removal Operations, an operational directorate of ICE, qualifies as a "high ranking government officer."  *Id.*  In fact, at all times relevant to this case, Mr. Homan was *four* degrees removed from a cabinet secretary: Mr. Homan reported to the Deputy Director of ICE, who reported to the Director of ICE, who reported to the Deputy Secretary of Homeland Security, who, finally, reported to the Secretary of Homeland Security.  *See* ICE Organizational Chart, https://www.dhs.gov/xlibrary/assets/org-chart-ice.pdf;

DHS Organizational Chart, https://www.dhs.gov/xlibrary/assets/dhs-orgchart.pdf.  This level of attenuation from a traditional high-level official, *see United States v. Morgan*, 313 U.S. 409, 422 (1941) (precluding the deposition of a high-ranking government official—the Secretary of Agriculture), militates against application of the apex doctrine in this case.

Rather than argue that the Executive Associate Director of Enforcement and Removal Operations is a high-level position, the Government invokes Mr. Homan's 18-month tenure as *Acting* Director of ICE to prevent his deposition.  This argument, however, must fail for the simple reason that Mr. Homan did not occupy this position during any period relevant to this case.[2] Indeed, the Government concedes that Mr. Homan became Acting Director of ICE only after the events in this case.  *See* Gov't Mem. at 3 ("Following the events in this case, in January 2017, Thomas Homan became the acting Director of ICE.").  Thus, the Government is asserting that the apex doctrine should shield Mr. Homan from a deposition, even though *none* of the rationales for doctrine, *i.e.* protecting the sanctity of the high-level official's decision-making and minimizing fear of litigation as a result of serving as a high-level official, are applicable because Mr. Homan was *not* a high-level official at the time he acted.  Accordingly, the Court should reject the Government's attempt to expand the apex doctrine in this manner.

The Government does not cite any cases, and Plaintiffs are aware of none, in which a deponent's future position was used to preclude a deposition regarding actions taken by the deponent in a lower-level position.  In fact, even the President of the United States was not allowed to escape a deposition regarding actions he took prior to taking office.  *Jones v. Clinton*, 869 F. Supp. 690, 699 (E.D. Ark. 1994) (holding that the president must submit to a deposition regarding acts committed *before* he took office), *aff'd in part, rev'd in part*, 72 F.3d 1354 (8th Cir. 1996),

---

[2] Plaintiffs also do not concede that *Acting* Director of ICE is a high-level position.

*aff'd*, 520 U.S. 681 (1997).  Therefore, even if the Court assumes that the apex doctrine applies to Mr. Homan as a result of his position as Acting Director, the doctrine cannot be used to preclude a deposition based on actions he took well before being promoted to that position.[3]

Regardless of Mr. Homan's position, his unique, first-hand, non-privileged knowledge of key facts relevant to Plaintiffs' claims makes him an appropriate deponent in this case.[4]

### III.    Mr. Homan Has Unique Personal Knowledge of Relevant Information Regarding Decisions and Policies that are Central to Plaintiffs' Causes of Action.

Mr. Homan has unique personal knowledge of relevant information regarding decisions and policies that are central to Plaintiffs' claims. The discovery material to date establishes that Mr. Homan was consulted during critical junctures in the case, was a key decision-maker on critical actions by Defendant, and has specialized knowledge regarding specific practices and policies that are central to Plaintiffs' claims and causes of action.

### A.  Mr. Homan's Personal Knowledge of Relevant Information to Plaintiffs' Claims.

### i.     Mr. Homan was a key decision-maker in the Government's attempted separation of Plaintiffs.

Mr. Homan was a direct participant, and the ultimate decision-maker, in the Government's attempted separation of Plaintiff A.S.R. from his mother, Plaintiff Suny Rodriguez Alvarado, a central event in Plaintiffs' Complaint. *See* Compl. ¶¶ 113-27, 169, 184. Mr. Homan, in his capacity as ICE's Executive Associate Director for Enforcement and Removal Operations, directly intervened in an email dispute about whether the decision to separate the family was proper and

---

[3] The Government's attempt to expand the apex doctrine to reach Mr. Homan's actions in this case would be problematic for two additional, and mutually reinforcing, reasons.  First, it would allow individuals who are promoted to higher office to escape responsibility for their prior bad actions.  And second, this lack of accountability would undermine trust in public officials who may circumvent questioning for their malfeasance.

[4] Even during his tenure of Acting Director of ICE, Mr. Homan was required to sit for at least one deposition.  *See United States v. State of California*, 2:18-CV-0490 (JAM) (KJN), ECF No. 28.

whether they should release A.S.R. into the custody of his aunt rather than to the Office of Refugee Resettlement ("ORR"). In *Pisani v. Westchester Cty. Health Care Corp.*, the court allowed the deposition of a Deputy County Executive merely because he had personally considered whether to terminate the plaintiff, and participated in a discussion of the plaintiff's termination. *See* No. 05-CV-7113 (WCC), 2007 WL 107747, at \*2-3 (S.D.N.Y. Jan. 16, 2007). Here, Mr. Homan's directive, relayed through ICE employee Tammy Cyr, was the *dispositive* decision in the lengthy discussion regarding the separation.  On April 3, 2015, Ms. Cyr wrote: "Change of plans.  Mr. Homan advises that we are to release the child to ORR per [Office of the Principal Legal Advisor']s recommendation in this case.  Please take action to turn the child over to ORR." (*See* Ex. A, Bates Nos. 006023; *see also id.* at 040982).

The documents also reveal that Mr. Homan requested an executive summary regarding Plaintiffs' case and had at least one meeting specifically focused on Plaintiffs' case. *See id.* at 038843-44; *id.* at 038842; *id.* at 040955-60. In his personal consideration of the Plaintiffs' separation, Mr. Homan requested documents exclusively about Plaintiffs and met with individuals to discuss Plaintiffs' case and its ramifications for future cases. *See id*. at 040955 (Email from Mr. Miller to Mr. Homan and others, referring to Plaintiffs' case and writing: "This process will have significant impact on withholding only cases.  I'm sure it will be an interesting discussion on Monday.").

ii.    **Mr. Homan Possesses First-Hand Information Regarding Specific Practices and Policies Relating to Plaintiffs' Custody.**

As a result of his former position as Executive Associate Director of ERO, Mr. Homan has unique, relevant information regarding bond determinations. This information pertains directly to a central allegation in the Complaint, that ICE's policy in early 2015 of considering deterrence of potential migrants when it made family detention custody determinations resulted in harms to

Plaintiffs including emotional distress and prolonged detention. *See* Compl. ¶¶ 22-35, 102.  This issue came up specifically in a chain of emails on which Mr. Homan was included, regarding ICE's practice of setting prohibitively high bonds for class members of *RILR v. Johnson*, No. 1:15-cv-00011-JEB (D.D.C.). *See* Ex. A, at 040909-16. On May 19, 2015, Mr. Homan had a call with Enrique "Henry" Lucero regarding "the bond amounts and the fact that many were set at $7,500." *Id.* at 040909.  Mr. Homan acknowledged this conversation in an email, saying: "Can you send me the charts that you shared with me during our meeting today showing the breakdown in bonds (most being 7500)?  I spoke with Henry and want to ensure we are all on the same page."  *Id.* at 007231.  The charts, which Mr. Homan personally requested, contained information specifically relevant to Plaintiffs' continued custody.  *See id.* at 007232-315.

### B.  Mr. Homan's Testimony is Unique Because of His Critical Decision-Making Role in Actions Underlying Plaintiffs' Claims.

Mr. Homan's personal knowledge and intent is unique and cannot be obtained through the questioning of other individuals. As noted earlier, Mr. Homan was the key decision-maker in the attempted separation of Plaintiffs. Mr. Homan's directive to release Plaintiff A.S.R. to ORR, relayed through ICE employee Tammy Cyr, was the *dispositive* decision in the lengthy discussion regarding the separation. (*See* Ex. A, Bates Nos. 006023; *see also id.* at 040982).  It is critical to Plaintiffs' claims to further explore why Mr. Homan gave this directive. Furthermore, Mr. Homan personally monitored Plaintiffs' case by requesting documents and attending a meeting devoted to Plaintiffs' case. What directives Mr. Homan gave his staff regarding how to handle Plaintiffs' case, and what directives he gave his staff regarding bond determinations is information critical to understanding why the Government refused to release Plaintiff A.S.R. to his aunt; why they attempted to separate Plaintiff A.S.R. from his mother, Plaintiff Ms. Alvarado; why they delayed in releasing Plaintiffs from custody together; and to Plaintiffs' allegations that, *inter alia*, ICE

supervisors negligently supervised ICE and Customs and Border Protection officials at the South Texas Family Residential Center detention facility, resulting in harms including emotional distress and prolonged detention.

Mr. Homan's dispositive role in the Government's attempted separation of Plaintiffs places him in a unique position to testify to the motivations behind the Defendant's action. *See, e.g.*, *Nyfield v. V.I. Tel. Corp.*, 202 F.R.D. 192 (D.V.I. 2001) (holding that a CEO's "hands-on control of employment matters within a company" made his testimony necessary to Plaintiff's ERISA claim); *see also Travelers Rental Co. Inc. v. Ford Motor Company, et. Al.*, 116 F.R.D. 140 (D. Mass. 1987) ("When the motives behind corporate action are at issue, an opposing party usually has to depose those officers and employees who, in fact, approved and administered the particular action."); *Victory v. Pataki*, No. 02-CV-0031, 2008 WL 4500202, at *2 (W.D.N.Y. Sept. 30, 2008) ("Upon review of the updated record, the Court is of the opinion that it is necessary for plaintiff to depose former Governor Pataki to lay to rest lingering questions regarding his possible involvement in the highly unusual series of events surrounding plaintiff's grant of parole and its subsequent recission."). Mr. Homan's directive to release the child to ORR was both an approval of action and administration of relevant policies of which Mr. Homan had unique knowledge.

Mr. Homan's unique knowledge of ICE policies was further demonstrated in the communications regarding ICE's practice of setting prohibitively high bonds for *RILR* class members. His request for bond determination charts and discussions of bond amounts, specifically in his meeting with Mr. Miller regarding the attempted separation of Plaintiffs, show that he played a critical, hands-on role in the administration of ICE family detention custody determinations that directly resulted in the Plaintiffs' prolonged and wrongful detention.

10

The Government attempts to resist Mr. Homan's deposition by claiming that his "knowledge and memory of this case, three years after the fact, is likely zero." Gov't Mem. at 8-9. Notably, the government does not state that Mr. Homan himself claims to have no memory of the case, but merely *suggests* that he possibly does not. This is no basis to prevent Mr. Homan's deposition from going forward. Moreover, even in cases where a proposed deponent does make a claim of lack of knowledge or memory, "overwhelming authority indicates that an alleged lack of knowledge is an insufficient ground to issue a protective order." *Adelphia Recovery Tr. v. Bank of Am., N.A.*, 2009 WL 1794992, at *2 (M.D. Pa. June 23, 2009) (quoting *Bynum v. District of Columbia,* 217 F.R.D. 43, 51 (D.D.C.2003)). *See also Grateful Dead Prods. v. Sagan*, 2007 WL 2155693, at *1, n. 5 (N.D. Cal. July 26, 2007) ("[W]here a corporate officer may have *any* first hand knowledge of relevant facts, the deposition should be allowed…. Further, a claimed lack of knowledge or recollection does not provide sufficient grounds for a protective order, since the opposing party is entitled to test that lack of knowledge or recollection.") (emphasis in original). Thus, the Government's unsupported suggestion of lack of knowledge and memory cannot preclude Mr. Homan's deposition.

**C.  Mr. Homan's Unique Personal Knowledge is Central to Plaintiffs' Causes of Action.**

Mr. Homan's direct participation in and knowledge of the decision-making process that led to the Government's attempted separation of Plaintiff A.S.R. from his mother Plaintiff Suny Rodriguez Alvarado is central to Plaintiffs' cause of action relating to abuse of process under the Federal Tort Claims Act ("FTCA"). *See* Compl. ¶ 169. Furthermore, Mr. Homan's participation in the Government's refusal to promptly release Plaintiff A.S.R. to his aunt at numerous junctures throughout the case is critically related to Plaintiffs' FTCA cause of action for false imprisonment. Compl. ¶¶ 175-179. Moreover, Mr. Homan's involvement in the creation of and execution of

policies and practices surrounding release on bond as applied to Plaintiffs is also central to Plaintiff's FTCA claim for false imprisonment. *Id.* Notably, Mr. Homan's involvement in all of these decisions as well as the underlying motives for them: the Government's decision not to release Plaintiff A.S.R. to his aunt; their decision to attempt to separate him from his mother; and their decision not to release Plaintiffs from custody together as a means of complying with the Immigration Judge order are all critical to Plaintiffs' intentional infliction of emotional distress claim.  Compl. ¶ 184. Lastly, the fact that Mr. Homan and the Government's aforementioned decisions were carried out under his supervision is directly related to Plaintiffs' negligent supervision and negligence claims. Compl. ¶¶ 192-201, 206-209. As such, the Government's assertion that Plaintiffs have made no showing how Mr. Homan's deposition will advance any of Plaintiffs' causes of action is wholly without merit.

### IV.    Mr. Homan's Deposition is Both Relevant and Proportional to the Needs of this Case.

Mr. Homan's testimony is highly relevant to the claims in this case. As discussed in detail above, he has unique personal knowledge of relevant information regarding decisions and policies that are central to Plaintiffs' causes of action in their complaint. "[I]t is axiomatic that plaintiff may obtain discovery regarding the claims in her complaint. The relevant inquiry is significantly broader at the discovery stage than at the trial stage." *Costantino v. City of Atl. City*, 152 F. Supp. 3d 311, 333 (D.N.J. 2015) (citing Fed. R. Civ. P. 26(b)(1)).

Having established the relevance of Mr. Homan's testimony, the burden to show that relevant discovery is objectionable or disproportionate falls on the party resisting discovery. *Employers Ins. Co. of Wausau v. Daybreak Express, Inc.,* 2017 WL 2443064, at *2 (D.N.J. June 5, 2017); *State Farm Mut. Auto. Ins. v. Fayda*, 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015). The government has fallen well short of meeting that burden here. Under Federal Rule of Civil

Procedure 26(b)(1), proportionality considerations include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." "Proportionality determinations are made on a case-by-case basis with the aforementioned factors, and no single factor is designed to outweigh the other factors in determining whether the discovery sought is proportional." *Employers Ins. Co,* 2017 WL 2443064, at *2 (citation and quotation marks omitted). In this case, the factors, taken together, clearly demonstrate that Mr. Homan's deposition is proportional to the needs of the case.

First, the "importance of the issues at stake in the action" weighs strongly in favor of allowing Mr. Homan's deposition, and goes beyond even the significant monetary stakes. Fed. R. Civ. P. 26(b)(1). As the Advisory Committee Notes to Fed. R. Civ. P. 26 explains, courts weighing proportionality must consider "the significance of the substantive issues, as measured in philosophic, social, or institutional terms," and many cases "may have importance far beyond the monetary amount involved." Fed. R. Civ. P. 26 Advisory Committee's Note to 2015 Amendment (quoting Advisory Committee's Note to 1983 Amendment). "Many . . . substantive areas . . . may involve litigation that seeks relatively small amounts of money, or no money at all, but that seeks to vindicate vitally important personal or public values." *Id.*

Though the government attempts to minimize the stakes here, in fact this is just the sort of case that seeks to vindicate vital personal and public values. Ms. Alvarado and A.S.R.'s case, brought under the Federal Tort Claims Act, goes to the heart of the government's treatment of families who arrive in the United States seeking protection from violence and persecution. As this Court recognized in its opinion denying the government's motion to transfer venue, "the case

13

implicates matters of national concern." Opinion at 16, ECF No, 34. "Plaintiffs were held in federal detention centers and allege mistreatment by federal officers in violation of federal policies. Immigration, and the treatment of those who have entered the United States without inspection is a matter of national concern." *Id.* at 15.

If this Court were to find that the Government's actions were tortious as to Ms. Alvarado and A.S.R., it could have a national impact, affecting the Government's practices and the possibility of relief for many other immigrant families. The tortious actions alleged in this case are not unique to Ms. Alvarado and A.S.R.: it is well-documented by both human rights organizations and the Government itself that the Government has separated other children from their parents, coerced other asylum seekers into abandoning their claims, and subjected other immigrant women and children to inhumane treatment in federal detention.[5] Thus the case affects important personal and public values, and has the potential to impact third parties. *See Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co.*, 322 F.R.D. 1, 7 (D.D.C. 2017) (granting motion to compel discovery where the case had "the potential to broadly impact a wide range of third-parties not involved in the litigation."); *Fassett v. Sears Holdings Corp*., 319 F.R.D. 143, 150 (M.D. Pa. 2017) (finding that the "importance of the issues" factor weighed in plaintiffs' favor because "[a]lthough this is not a case involving, for instance, constitutional rights or matters of national significance, to these particular litigants, it is a matter of grave import. Further, its outcome may impact the marketability of a widely sold piece of home machinery or some of its components."); *Schultz v. Sentinel Ins.*

---

[5] *See, e.g.* "US: Separated Families Report Trauma, Lies, Coercion," Human Rights Watch (July 26, 2018), *available at* https://www.hrw.org/news/2018/07/26/us-separated-families-report-trauma-lies-coercion; "In the Freezer: Abusive Conditions for Women and Children in US Immigration Holding Cells," Human Rights Watch (February 28, 2018), *available at* https://www.hrw.org/report/2018/02/28/freezer/abusive-conditions-women-and-children-us-immigration-holding-cells; "Ailing Justice: New Jersey: Inadequate Healthcare, Indifference, and Indefinite Confinement in Immigration Detention , Human Rights First (February 2018), *available at* https://www.humanrightsfirst.org/sites/default/files/Ailing-Justice-NJ.pdf; "Concerns about ICE Detainee. Treatment and Care at Detention Facilities," Department of Homeland Security Office of Inspector General (December 11, 2017), *available at* https://www.oig.dhs.gov/sites/default/files/assets/2017-12/OIG-18-32-Dec17.pdf.

*Co., Ltd*, 2016 WL 3149686, at *7 (D.S.D. June 3, 2016) ("The court applies the proportionality requirement built into Rule 26, but rejects Sentinel's characterization of the value of Ms. Schultz's case as a $17,000 case that benefits her alone. … If punitive damages are awarded, Ms. Schultz has the potential to affect Sentinel's alleged business practices and to remedy the situation for many insureds, not just herself.").

Further, the Government's objections about the cost and time burdens of defending one additional deposition are unavailing.  The government complains that it has already produced many documents, attended other depositions within the scope of the agreed-upon discovery plan, complied with Plaintiffs' demand for site inspection under Fed. R. Civ. P. 34(a)(2),[6] and expended approximately $15,000 on depositions. Gov't Mem. at 8. However, the mere fact that the Government has met its other discovery obligations does not undermine its responsibility to produce this highly relevant fact witness for deposition.  Moreover, the amount in controversy at stake in this case is far higher than the amount spent on depositions thus far – and common sense dictates that it would also be higher than the expense of defending one additional deposition. *See Bell v. Reading Hosp.*, 2016 WL 162991, at *3 (E.D. Pa. Jan. 14, 2016) (compelling discovery where the cost would not exceed the alleged damages in the case). This is especially true because Plaintiffs have stated their willingness to accept reasonable limitations on the duration of the deposition. *See Wertz v. GEA Heat Exchangers Inc.*, 2015 WL 8959408, at *3 (M.D. Pa. Dec. 16, 2015) (allowing a deposition to move forward where "the cost would not likely outweigh the likely benefit of the additional deposition, as counsel for Plaintiff represented to the Court that they

---

[6] Plaintiffs note that while the government characterizes the planned site inspections of the CBP facilities where Plaintiffs were detained as their having "arranged for Plaintiffs' law school clinic to visit," Gov't Mem. at 1, in fact Plaintiffs are entitled to such inspections under Fed. R. Civ. P. 34(a)(2). Plaintiffs' counsel, which happens to include a law school clinic, will conduct the site inspections along with nationally recognized experts on conditions of confinement.

expect the deposition to be limited to two hours."). *See also Vay v. Huston*, 2016 WL 1408116, at *6 (W.D. Pa. Apr. 11, 2016) ("Though Defendant has raised the considerable expense already incurred in defense of this case and its use of taxpayer dollars to fund that defense, it has also chosen to rigorously defend this action . . . the Court finds that the extensive discovery undertaken to date appears proportional to the needs of this Case.") Moreover, the government does not claim that it *lacks* the resources to defend Mr. Homan's deposition, or that it does not have relative access Mr. Homan's testimony—nor could it support such claims.

Additionally, the Government does not argue that Mr. Homan's post-retirement obligations preclude a deposition or impose any burdens. *See Van Den Eng*, 2005 WL 3776352, at *2 ("[CEO] Phillips is no longer working for [the company], militating against the application of the Apex doctrine in this case . . . Here, Phillips has no corporate responsibilities with which to interfere."). Mr. Homan's occupation, if any, is unknown, and the Government fails to even argue that the deposition would interfere with any of his current responsibilities. *Id.* at n.3 ("Phillips current occupation, if any, is unknown, and Defendants fail to even argue that this deposition would interfere with any current responsibilities he might have."); *Sanstrom*, 1996 WL 469589, at *5 ("It is true that when the witness sought to be deposed is a high-level government official, a party must show both the need for the deposition and that it will not hinder governmental functions.  However, because Mr. Cuomo is no longer governor, he cannot claim this privilege."  (citations omitted)).

Finally, as discussed above, the importance and benefit of taking Mr. Homan's deposition outweighs any burden on the government.  Plaintiffs' request to depose a single retired individual, Mr. Homan, who has personal knowledge of, and direct involvement in, core allegations in the Complaint easily passes the relevance and proportionality principles that underlie the Court's discovery inquiry.  *See* Fed. R. Civ. P. 26.

16

## CONCLUSION

For the reasons set for above and in their letter to the Court, Plaintiffs respectfully request that the Court order the Government to make Mr. Homan available for a deposition.

Respectfully submitted,

s/ Reena Parikh

Reena Parikh, Supervising Attorney, Bar No. 048202011
Aseem Mehta, Law Student Intern*
Peter Menz, Law Student Intern*
Andrea Taverna, Law Student Intern*
Muneer I. Ahmad, Supervising Attorney
Jerome N. Frank Legal Services Organization
P.O. Box 209090
New Haven, CT 06511
Phone: (203) 432-4800
muneer.ahmad@ylsclinics.org

Farbod K. Faraji, Esq.
Gibbons P.C.
One Gateway Center
Newark, New Jersey 07102
Phone: (973) 596-4731
FFaraji@gibbonslaw.com

Elora Mukherjee (EM 018282005)
Morningside Heights Legal Services, Inc.
Columbia Law School
435 West 116th Street
New York, NY 10027
Phone: (212) 854-4291
EMukherjee@law.columbia.edu

Swapna Reddy, Esq.
Dorothy Tegeler, Esq.
Liz Willis, Esq.
Doug Lasdon, Supervising Attorney
Asylum Seeker Advocacy Project (ASAP)
Urban Justice Center
40 Rector Street, 9th Floor

17

New York, New York 10006
Phone: (646) 602-5600
dlason@urbanjustice.org

*Attorneys for Plaintiffs*

* Application to appear as law student intern pending

18