CRAIG CARPENITO
United States Attorney
DANIEL W. MEYLER
Assistant United States Attorney
970 Broad Street, Suite 700
Newark, NJ 07102
Tel. (973) 645-2719
Email: daniel.meyler@usdoj.gov

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SUNY YANETH RODRIGUEZ ALVARADO & A.S.R., a minor, <br><br> *Plaintiffs*, <br><br> v. <br><br> THE UNITED STATES OF AMERICA, <br><br> *Defendant*. | Hon. Madeline C. Arleo <br><br> *Civil Action No.* 16-5028 (MCA) (SCM) |

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
REQUEST TO DEPOSE THE FORMER DIRECTOR OF
U.S. IMMIGRATION & CUSTOMS ENFORCEMENT**

CRAIG CARPENITO
United States Attorney
970 Broad Street, Suite 700
Newark, New Jersey 07102
(973) 645-2700

*On the Brief:*
Daniel W. Meyler
Assistant United States Attorney

## TABLE OF CONTENTS

**Preliminary Statement** .......................................................................... 1

**Procedural Background** ........................................................................ 2

**Argument** ................................................................................................ 3

I.    **Former high-ranking government officials are generally protected from sitting for a deposition.** ................................... 3

II.   **Plaintiffs are asking the Court to make an exception to the general rule, but there is no basis to do so.** ..................... 6

    A. Director Homan had minimal personal involvement in this case ........................................................................................ 6

    B. The information sought in the proposed deposition is available from other witnesses ..................................................... 7

III. **Director Homan's deposition is neither relevant nor proportional to the needs of this case** ..................................... 8

    A. Director Homan's deposition will not likely provide information relevant to Plaintiffs' FTCA claims ....................... 8

    B. Even if it were relevant, Director Homan's deposition is not proportional to the needs of this FTCA case ............................. 8

**Conclusion** .............................................................................................. 9

## PRELIMINARY STATEMENT

Plaintiffs seek to depose the former Director of U.S. Immigration and Customs Enforcement ("ICE"), Thomas Homan, because he is mentioned in a handful of emails exchanged as part of the voluminous discovery in this Federal Tort Claims Act lawsuit. Under the "*Morgan* Doctrine" and its progeny, deposing a former high-ranking government official should only be allowed in exceptional circumstances, and this case does not present such a circumstance. *See United States v. Morgan*, 313 U.S. 409 (1941); *United States v. Wal-Mart Stores, Inc.*, No. CIV.A. PJM-01-CV-152, 2002 WL 562301, at *1 (D. Md. Mar. 29, 2002). Plaintiffs have not shown either the requisite personal involvement by Director Homan or that the information sought from Director Homan is unavailable from other witnesses.

Further, even if *Morgan* protections did not apply, taking the deposition of the former director of ICE is not proportional to the needs of this tort case, which alleges that two individuals suffered psychological harm and worsened asthma from four months in Customs and Border Protection ("CBP") and ICE detention after they crossed the Rio Grande River in January 2015. The Government has already collected over 1 million emails in this case. It has produced over 40,000 pages of documents from 18 different ICE custodians. The Government has arranged for Plaintiffs' law school clinic to visit three CBP sites in South Texas. It has also offered, without objection, numerous current and former Government employees for depositions in Newark, Memphis, Dallas, McAllen, San Antonio, Houston, and

Washington, D.C. The Government has made every effort to meet its discovery obligations and has incurred significant expenses doing so. But Plaintiffs have made no showing as to how the Director of ICE's deposition will advance any of the five tort causes of action in this lawsuit. Plaintiffs' demand to depose Director Homan is not proportional to the needs of this case and Plaintiffs' request should be denied.

## PROCEDURAL BACKGROUND

Plaintiffs filed this action on August 17, 2016, alleging, among other things, that they were wrongfully arrested and detained after they crossed the Rio Grande River in January 2015, and that they suffered psychological harm and worsened asthma as a result of their time in facilities maintained by the Department of Homeland Security ("DHS"). (*See generally* Compl., ¶¶ 1, 31.)

Discovery in this case commenced in May 2017, and, to date, the Government has produced over 40,000 pages of DHS records and government employee emails in response to Plaintiffs' 40+ discovery requests, interrogatories, and supplemental requests. In one email thread involving thirteen ICE employees, dated April 3, 2015, ICE employee Tammy Cyr directed ICE employee Deborah Achim to "release [plaintiff A.S.R.] to [the Office of Refugee Resettlement] per OPLAs [*i.e.*, ICE legal counsel's] recommendation in this case." Ms. Cyr wrote that Mr. Homan, then the Executive Associate Director of Enforcement and Removal Operations ("ERO"), weighed in on taking that action. Homan did not personally participate in the email chain. Plaintiffs cite to three other emails that are part of the same

discussion mentioning Director Homan, including him on a meeting invite, and referencing his receipt of an executive summary. Plaintiffs cite to a final email in which Director Homan requests a spreadsheet showing bond amounts for a number of detainees—but not the Plaintiffs. Following the events in this case, in January 2017, Thomas Homan became the acting Director of ICE.

On March 22, 2018, before any depositions in the case, Plaintiffs informed the Government that they wished to take Director Homan's deposition. The Government has consistently conveyed to Plaintiffs that it cannot agree to produce Director Homan because his deposition is not proportional to the needs of the case. To date, Plaintiffs have taken two depositions of ICE employees, and the parties have scheduled six additional depositions of Government employees—in San Antonio, Dallas, McAllen (Texas), Houston, and Washington D.C.—which are set to take place in August. Plaintiffs have not requested depositions of most of the other participants in the emails. Between July 28 and July 31, the parties exchanged their positions on this issue and unfortunately were not able to reach an agreement.

## ARGUMENT

### I. Former high-ranking government officials are generally protected from sitting for a deposition.

The Supreme Court has held that high-ranking government officials are generally not required to sit for a deposition. *See United States v. Morgan*, 313 U.S. 409 (1941). In support of the "*Morgan* Doctrine," also known as the "apex doctrine," courts give three primary reasons: (1) deposing high-ranking government officials may jeopardize the agency decision-making process; (2) potential discovery over any

high-ranking government official's decisions may discourage otherwise qualified and dedicated individuals from pursuing public service; and (3) "litigation-related burdens" may render agency heads "remaining [time] for government service significantly diluted or completely consumed." *See United States v. Wal-Mart Stores, Inc.*, No. CIV.A. PJM-01-CV-152, 2002 WL 562301, at *1 (D. Md. Mar. 29, 2002); *Id.; see also FDIC v. Galan-Alvarez*, No. 15-mc-00752 (CRC), 2015 WL 5602342 (D.D.C. Sep. 4, 2015).

"The *Morgan* Doctrine also protects *former* high-ranking officials from being deposed." *Wal-Mart Stores*, 2002 WL 562301, at *1 (emphasis added); *Galan-Alvarez*, 2015 WL 5602342, at *4 ("The apex doctrine is no less applicable to former officials than to current officials.") That is because two of the three *Morgan* rationales survive even after a high-ranking official has left his post: (1) protecting the sanctity of the agency's decision-making process and (2) encouraging would-be public servants to hold office without fear of follow-on litigation after their term of service. *See id.* at *3; *FDIC*, 2015 WL 5602342, at *4 (noting that "the other two rationales apply . . . with equal force" to former officials). As the court in *Wal-Mart Stores* explained:

> "Should the courts allow and encourage such officials to be subject to such demands when their terms of office come to an end? If so, such public servants should very well expect a mailbag full of deposition subpoenas on the day they depart office. If the immunity *Morgan* affords is to have any meaning, the protections must continue upon the official's departure from public service."

*Wal-Mart Stores*, 2002 WL 562301, at *3 (internal quotation marks omitted).

Parties who seek depositions of current or former high-ranking officials must show extraordinary circumstances that warrant an exception to *Morgan*'s protection. *See United States v. Sensient Colors, Inc.*, 649 F. Supp. 2d 309, 316 (D.N.J. 2009) (noting "wide agreement among the Circuits"). The court in *Sensient Colors* outlined a five-factor test for determining whether a situation is so extraordinary as to outweigh *Morgan* protection:

(1) the official's testimony is necessary to obtain relevant information that is not available from another source;

(2) the official has first-hand information that cannot be reasonably be obtained from other sources;

(3) the testimony is essential to the case at hand;

(4) the deposition would not significantly interfere with the ability of the official to perform his governmental duties; and

(5) the evidence sought is not available through less burdensome means or alternative sources.

*Sensient Colors*, 649 F. Supp. 2d at 318, 322 (internal citation omitted). Here, factors 1, 2, 3, and 5 weigh against allowing Director Homan's deposition (a) because he did not have sufficient "personal involvement" in this case and (b) because the information sought in his proposed deposition is available through the testimony of other witnesses. *See also Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007); *Alexander v. FBI*, 186 F.R.D. 1, 5 (D.D.C. 1998) (holding that the movant must exhaust other available avenues for discovery).

## II. Plaintiffs are asking the Court to make an exception to the general rule, but there is no basis to do so.

### A. Director Homan had minimal personal involvement in this case.

Plaintiffs argue that Director Homan's mention in a handful of emails shows his "first-hand . . . knowledge" of A.S.R.'s claims. Plaintiffs make much of the fact that Homan was "kept abreast of developments," "receiv[ed] a report," was included on a meeting invitation, and may have been "part of [a] discussion" about the treatment of minors in detention. But the mention of a senior official in an email or his inclusion in a meeting invite is not sufficient "personal involvement" to justify subjecting that official to a deposition because "high-ranking officials will be privy to a wide range of information due solely to their positions." *See Wal-Mart Stores*, 2002 WL 562301, at *3. Rather, under *Morgan*, the supervisor's involvement must be more "hands-on and personal" than "supervisory and directory." *See id.*

Here, Plaintiffs have not alleged any action taken by Homan that rises to the level of "hands-on" involvement in A.S.R.'s case. *See Sensient Colors*, 649 F. Supp. 2d at 322 (noting that personal involvement or knowledge comes from an alleged "act"). Instead, Homan's involvement was limited to weighing in on a policy decision of the agency relating to the treatment of parent/minor groups where the minor is eligible for release but the parent is not. As a pointed contrast, in *Gibson v. Carmody*, the court allowed a police commissioner's deposition because he "personally participated in . . . disciplinary action" of the defendant officer. *See Gibson v. Carmody*, No. 89 Civ. 5358 (LLM), 1991 WL 161087, at *1 (S.D.N.Y. Aug. 14, 1991). In this case, Ms. Cyr indicates that Homan deferred to "OPLAs [*i.e.*, ICE

legal counsel's] recommendation" regarding A.S.R.'s release. *Cf. Toussie v. County of Suffolk*, No. CV 05-1814 (JS) (ARL), 2006 WL 1982687, at *2 (E.D.N.Y. July 13, 2006) (granting the deposition of a former County Executive where plaintiffs alleged that the deponent "directly interfered" with plaintiffs' ability to purchase property by ordering deviation from ordinary, competitive business practice).

Indeed, the last email referenced by Plaintiffs, the only one in which Homan himself writes anything, does not even involve the Plaintiffs. Rather, Homan requests a spreadsheet showing the bond amounts set by ICE for a number of individuals in removal proceedings. Despite several generalized allegations about ICE policy in the Complaint, this case is not about ICE bond policy. That is chiefly because Plaintiff Suny Alvarado was never eligible for release on bond. The fact that Plaintiffs cite to an email chain about bond amounts to justify the former ICE director's deposition suggests that their true goal in seeking this deposition is to depose him on past ICE policies and not the claims at issue in this lawsuit.

**B. The information sought in the proposed deposition is available from other witnesses.**

Homan's limited involvement aside, the information Plaintiffs are seeking— *i.e.*, information about the decision to release A.S.R.—is available from a number of other ICE employees who were copied on the email chains. Case law requires plaintiffs to show that Director Homan's knowledge is "unique" or "superior" to other government employees and that the information is unavailable from other sources. *See, e.g., Buono v. City of Newark*, 249 F.R.D. 469, 470 n.2 (D.N.J. 2008) ("the practice of calling high ranking government officials as witnesses should be

-7-

discouraged"); *Reif v. CNA*, 248 F.R.D. 449 (E.D. Pa. 2008) (denying motion to compel senior executive's deposition where "lower level employees [were] more knowledgeable"). Here, for example, there are thirteen other lower-ranking employees participating in the first email chain:

1. Tammy Cyr
2. **Deborah Achim**
3. Robert Guadian
4. Julian Calderas
5. Enrique Lucero
6. Stephen Antkowiak
7. Deane Dougherty
8. **Philip T. Miller**
9. Jo Ann McLane
10. **Valentin De La Garza**
11. James Yi
12. Nicole Guzman
13. Adam Loiacono

Plaintiffs have expressed their intention to take depositions of three of these thirteen employees (bolded on the list above). The court in *Coleman v. Schwarzenegger* explained that "a party seeking to depose a high-ranking official must make a showing as to what efforts have been made to determine whether the information is otherwise available and the extent to which their efforts failed to uncover such information." *See Coleman v. Schwarzenegger*, No. CIV S-09-0520 LKK JFM P, C01-1351, 2008 WL 4300437, at *4 (E.D. Cal. 2008). Plaintiffs have not yet deposed the above three individuals, nor have they made a showing as to why these and other ICE employees would not allow them to uncover the information they are seeking about A.S.R.'s release.

For example, in *Bogan v. City of Boston*, the plaintiff sought to take a mayor's deposition. *See Bogan*, 489 F.3d 417, 424 (1st Cir. 2007). The First Circuit rejected the plaintiffs' arguments because the plaintiffs did nothing to determine whether the information could have been obtained from lower-ranking employees first—

-8-

"they did not pursue other sources to obtain relevant information before turning to the Mayor." *Id.* Here, the depositions of Ms. Achim, Mr. Miller, and Mr. De La Garza—all senior employees within ICE with access to the decision-making discussed in the emails—will likely provide any necessary discovery on this issue.

### III. Director Homan's deposition is neither relevant nor proportional to the needs of this case.

#### A. Director Homan's deposition will not likely provide information relevant to Plaintiffs' FTCA claims.

Plaintiffs do not articulate how a deposition of Director Homan would advance any of the five causes of action in this lawsuit: abuse of process, false imprisonment, intentional infliction of emotional distress, negligent supervision, and negligence. Plaintiffs do not explain how his deposition would make any of their tort claims "more or less probable," especially as compared to other potential witnesses. *See* Fed. R. Evid. 401(a).

#### B. Even if it were relevant, Director Homan's deposition is not proportional to the needs of this FTCA case.

In any event, taking Director Homan's deposition would contravene Rule 26's proportionality requirement. Discovery in this case began in May 2017, and, since then, the Government has collected over 1 million emails and produced over 40,000 pages. The parties are in the midst of scheduling and attending a half-dozen depositions throughout the country. Each deposition involves significant travel, time, and expense (to-date, the Government has spent approximately $15,000 to defend depositions for this case). Director Homan did not actively participate in Plaintiffs' case. Director Homan's knowledge and memory of this case, three years

-8-

after the fact, is likely zero. A handful of emails out of 40,000 pages do not provide adequate justification for discovery that is unlikely to yield any information—let alone any meaningful information—about Plaintiffs' claims.

## CONCLUSION

For the reasons stated above, the Government respectfully requests that the Court deny Plaintiffs' motion to compel discovery.

Dated: Newark, New Jersey
August 1, 2018

                                              CRAIG CARPENITO
                                              United States Attorney

By:   */s/ Daniel W. Meyler*
       DANIEL W. MEYLER
       Assistant United States Attorney